UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

HENRY BANNISTER,

                           Plaintiff,                        **REPORT AND**
                                                                  **RECOMMENDATION**

  -against-

                                                                  18-CV-7285 (EK) (ST)

DETECTIVE MARVIN LUIS, RYAN GIUFFRE,
POLICE OFFICER JOSEPH GIANNINA

                           Defendant.
-------------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

## INTRODUCTION

      This case results from Plaintiff Henry Bannister's arrest, detention, and subsequent criminal prosecution, which took place from May 24, 2016, until September of 2018, and during which Plaintiff alleges his rights were violated by Defendants. Plaintiff, proceeding *pro se*, filed a complaint which is a collection of grievances filed to other bodies, alleging conduct which violated his federal rights. Before this Court is Defendants' motion for summary judgment on the claims of false arrest and malicious prosecution, to declare any state-law claims time-barred, and to dismiss Defendant Giannina from the action. Defendants also ask that we deem Plaintiff's claims abandoned. For the reasons discussed below, I recommend the Defendants' motion be GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

    **I.**     **Facts**

      On May 24, 2016, Plaintiff was parking a rental car when two officers, Defendants Luis and Giuffre, approached his vehicle. Pl. Compl., 15, ECF No. 1. In the driver's seat of the car

1

was the Plaintiff, while a man named Tashaun Canty was in the passenger's seat. *Id.* According to Plaintiff's complaint, Officer Luis opened the passenger side door and removed Mr. Canty from the vehicle, while Officer Giuffre approached the driver's side window and tapped on it to get Plaintiff's attention. *Id.* Plaintiff says Officer Giuffre asked him for his license and registration and, in lieu of registration, he handed the Officer his rental contract. *Id.* at 15-16. He claims that during this exchange he saw Officer Luis escorting Mr. Canty to an unmarked police vehicle, which pulled away with Mr. Canty inside. *Id.* at 16. Plaintiff was then asked by Officer Giuffre if he had anything in the car or on his person that would cause harm to him, to which Plaintiff responded he did not. *Id.* Officer Giuffre asked the Plaintiff to get out of the car and proceeded to frisk him and the area in the vehicle where Plaintiff had been sitting. *Id.*

At that point, Plaintiff claims, Officer Luis returned, entered the car, and began to search. *Id.* at 16-17. After approximately 2-3 minutes, Plaintiff heard Officer Luis call out a number to Officer Giuffre, which he believes to have been a signal to arrest him. *Id.* at 17. Officer Giuffre then handcuffed Plaintiff and escorted him to the un-marked sedan, which had returned in that time, and he was transported to the precinct. *Id.*

The arrest report shows the reason Plaintiff was arrested was because Officer Luis found a loaded handgun in the center console of the car. *See Def. R. 56.1 Br.,* ¶ 2, ECF No. 47-2. Plaintiff himself confirmed this, saying in his deposition, "The gun that was found in the car wasn't mine." Bannister Dep., 16, ¶¶ 16-17, ECF No. 47-5. Defendants also submitted the results of a D.N.A. test performed on the gun, which showed that the DNA found on a swab of the "slide grip grooves, slide lock lever and safety" was "approximately 126 billion times more probable if the sample originated from Henry Bannister and two unknown, unrelated persons than if it originated from three unknown, unrelated persons." D.N.A. Rep., ECF No. 47-9.

At some point after the arrest, there was a conversation between Plaintiff and Defendant Luis regarding $5,000 found in the vehicle. Plaintiff claims that while at the precinct, he asked Officer Luis if the money inside his luggage bag was safe and if he could have his sister come to the precinct to pick it up. *Id.* at 17. He claims Officer Luis responded, "We don't want your fucking dope money, after were finish [sic] with you, getting that money back would be the least of your problems." *Id.* The police report tells a different story. In the report, Officer Giuffre attests that Officer Luis told him that Plaintiff told Officer Luis he did not have to bring him in for the gun and that Officer Luis could keep what was in the car. Police Rep., 2, ECF No. 47-8.

Plaintiff was charged with criminal possession of a weapon in the second, third, and fourth degree, criminal possession of a firearm, possession of pistol ammunition, and bribery in the second and third degree. Def. R. 56.1 Br., ¶ 4, ECF No. 47-2. The gun was later suppressed, and all charges were dropped. Pl. Compl., 25, ECF No. 1.

The record before the Court as to what happened at Plaintiff's suppression hearing is very sparse (*See* New York State Sup. Ct. Docket, ECF No. 47-10), and Defendants do not provide any further details on why the firearm was suppressed. Plaintiff claims that the Officers had no authority to stop the car, as Plaintiff was lawfully parking, and that Officers Giuffre and Luis gave conflicting testimony on what gave them probable cause to stop and search the vehicle, resulting in the gun's suppression. Pl. Compl., 19-20, 23, ECF No. 1.

At the grand jury proceeding, Plaintiff claims that Officer Giuffre testified that the vehicle was stopped because it was parking too close to a fire hydrant. Pl. Compl., 20, ECF No. 1. But Plaintiff says it was later discovered that the fire hydrant in question was actually over 85 feet away from where his car was stopped. *Id.* at 24. He claims one of the officers also offered up during the grand jury proceeding that they smelled marijuana as they approached the car,

3

which was why they searched it. *Id.* at 21.  However, at a later court proceeding, on September 19, 2017, Plaintiff says one of the officers instead testified that they saw what looked like a marijuana cigarette, which is why they searched the car. *Id.* at 22.  Plaintiff has not supported these contentions with exhibits from the suppression hearing record.

Subsequent to Plaintiff's arrest, he was brought to the station where he completed booking procedures, after which he says his hands were tightly handcuffed behind his back. *Id.* at 18.  He was then taken to a steep stairway. *Id.*  Because Plaintiff is a bilateral prosthesis wearer, he struggled to climb the stairs and had to be led by the handcuffs. *Id.*  After climbing the stairs he was led to a room where he was read his *Miranda* warnings, and then was led back down the same staircase. *Id.*  After this, he claims he was placed in a cell still in the handcuffs. He claims those tight handcuffs were left on him for several hours and he was left in such a position that they cut off circulation to his hands and arms. *Id.*  He claims that he was in tears, and it was not until the facilities' change of shift procedures that they were removed. *Id.*

**II.    The Instant Motion**

The motion before this Court is a motion for summary judgment by Defendants, filed on May 13, 2021. Def. Mot., ECF No. 47.  In their motion, Defendants request summary judgment on any false arrest and malicious prosecution claims. *Id.*  They also request the Court dismiss Officer Giannina from the complaint for lack of personal involvement. *Id.*  Finally, they request this Court declare that any state law claims relating to Plaintiff's arrest are time-barred. *Id.*

Defendants served the motion on Plaintiff in accordance with the notice requirements contained in E.D.N.Y. Local Rule 56.2.  Plaintiff did not respond to the motion.  Defendants write that they contacted Plaintiff on May 4, 2021, and May 10, 2021, after he failed to respond to the motion, and Plaintiff informed them that he had received Defendants' motion papers and

4

did not intend to file an opposition to the Defendants' motion. *See* Def. May 13, 2021 Ltr., ECF No. 47-12.

## LEGAL STANDARD

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if the fact "might affect the outcome of the suit under the governing law…" *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists as to a material fact when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

On motions for summary judgment, the moving party bears the initial burden of establishing the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party meets that burden, the non-moving party must then show there is a genuine dispute for trial. *Id.* The burdens on both parties as to the underlying elements are aligned as they would be at trial. *Anderson,* 477 U.S. at 254.

When considering a motion for summary judgment, the Court must construe "all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

Because Plaintiff is proceeding *pro se*, the Court affords "special solicitude" to him when considering a motion for summary judgment. *See Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). This "special solicitude" includes reading the filings of a *pro se* litigant "liberally" and interpreting them to "raise the strongest arguments that they suggest." *Minus v. City of New York*, 488 F. Supp. 3d 58, 63 (S.D.N.Y. 2020) (citing *McPherson v. Coombe*, 174 F.3d 276, 280

(2d Cir. 1999)) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, a nonmoving *pro se* plaintiff cannot rely solely upon the pleadings to defeat summary judgment and must point to specific evidence in the record to carry his burden in summary judgment. *See Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). Where the nonmovant bears the burden at trial, the movant may make a prima facie case for summary judgment by either identifying sufficient evidence to negate the nonmovants claims or identifying evidentiary insufficiencies in Plaintiff's case that demonstrate the absence of a genuine issue of material fact. *Id.* at 272-73 (citing *Celotex,* 477 U.S. at 323); *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

A party's failure to respond to contentions raised in a motion to dismiss generally constitutes abandonment of those claims. *Laface v. Eastern Suffolk BOCES,* 349 F. Supp. 3d 126, 161 (E.D.N.Y. 2018). However, where the silent party is *pro se*, abandonment is only generally granted where an intention has been expressed to abandon the claim. *See Omosefunmi v. Weiss*, No. 99-0025, 1999 U.S. App. LEXIS 25093 at *4 (2d Cir. Sep. 30, 1999). Ultimately the question of abandonment is "one of intent." *Austin v. Ford Models, Inc.,* 149 F.3d 148, 155 (2d Cir. 1998).

## DISCUSSION

Interpreting the Plaintiff's complaint as liberally as possible, the I believe there to be four cognizable legal claims within it, claims for: 1) false arrest; 2) malicious prosecution; 3) illegal stop and search; and 4) excessive force. I presume, though it is not stated in the complaint, that these are brought under 42 U.S.C. §1983, which "provides remedies [under federal law] for deprivations of rights established elsewhere." *City of Okla. City v. Tuttle*, 471 U.S. 808 (1985). A claim under §1983 requires that the individuals sued acted "under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

6

Defendants' brief addresses the claims of false arrest and malicious prosecution. Defendants ask that, due to Plaintiff's failure to respond, the Court deem these claims abandoned. I recommend that the Court not do so, given that Plaintiff has not expressed an intent to abandon the claims, and has merely failed to respond. Instead, I will perform a standard summary judgment analysis of those claims and will address each claim I believe raised by Plaintiff's complaint in turn, as well as Defendants' motions to dismiss potential state law claims and Defendant Giannina.

## I.  The Court Should Take the Following Actions on Plaintiff's Claims:

### a. Summary Judgment Should Be Granted to Defendants on Plaintiff's False Arrest Claim.

The Fourth Amendment of the United States Constitution provides a right to be free from unreasonable seizures, which includes the right to be free from arrest without probable cause. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). The elements of a false arrest claim under §1983 are analogous to those under New York law: to meet his burden, Plaintiff must show the Defendants intentionally confined him without his consent and without justification. *Id.* Probable cause to arrest is justification, and "is a complete defense to an action for false arrest." *Id.* (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir. 1995); *Broughton v. State,* 37 N.Y.2d 451, 458 (1975).

The parties do not dispute that a loaded handgun was found in the car Plaintiff was driving prior to his arrest; Plaintiff merely claims that the gun did not belong to him. Bannister Dep., 16, ¶¶ 16-17, ECF No. 47-5. In New York, a loaded gun in a car is generally probable cause to arrest the driver, regardless of the actual ownership of the gun.

Probable cause requires only "a reasonable ground for belief of guilt" that is "particularized with respect to the person to be…seized." *Maryland v. Pringle,* 540 U.S 366, 370

7

(2003) (quoting in part *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)).  Reasonableness is judged from the viewpoint of an "objectively reasonable officer." *Ornelas v. United States,* 517 U.S. 690, 776 (1996).

In New York State, a person is guilty of criminal possession of a weapon in the second degree if he or she possesses a loaded firearm and does not have a license to possess such a firearm.  *See* N.Y. Penal Law §265.03.  Under New York law, the existence of a firearm in an automobile creates a permissive presumption that all occupants of the vehicle have common constructive possession of the firearm, absent statutory exceptions, none of which apply in this case.  *See* N.Y. Penal Law § 265.15(3).  If a jury may make a presumption of possession under the law, it is reasonable for a police officer to do the same.  Therefore, upon finding the loaded handgun in the car, the officers had probable cause to arrest Plaintiff, which is a justification that defeats any false arrest claim.

Nor can Plaintiff maintain that the gun cannot be used as a justification for the arrest because the stop or search which led to the finding of the gun was unlawful.  The fruit of the poisonous tree doctrine does not apply to §1983 claims. *Townes v. City of New York,* 176 F.3d 138, 145 (2d Cir. 1999).  We deal only with the situation at the time of the arrest.  At that time, an objectively reasonable officer would be well within his rights to believe the loaded handgun was possessed by Plaintiff, giving the officer probable cause that Plaintiff had committed a crime.  Because there is no dispute a loaded handgun was found in the car, justification exists for the arrest, and so summary judgment should be granted to Defendants on this claim.

      **b. Summary Judgment Should Be Granted to Defendants on Plaintiff's Federal Malicious Prosecution Claim**

To prove malicious prosecution, Plaintiff must show "a seizure or other perversion of proper legal procedures implicating [his] personal and privacy interests under the Fourth

Amendment" that was "initiated or continued against him, with malice and without probable cause, and [was] terminated in his favor." *See Lanning v. City of Glens Falls,* 908 F.3d 19, 24 (2d Cir. 2018) (quoting in part *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)).

It is dubious whether Plaintiff pleads facts that give rise to an inference of malice against him by Officers Giuffre and Luis. Perhaps the closest he gets is in quoting Officer Luis who, he claims, in response to him asking about whether the money left inside his luggage bag was safe, responded, "We don't want your fucking dope money, after were finish [sic] with you, getting that money back would be the least of your problems." *See* Pl. Compl., 17, ECF No.1. After that comment, Plaintiff was charged with bribery and gun charges.

Even if Plaintiff does plead facts that give rise to malice, he must also support the contention there was not probable cause. Plaintiff does say in his complaint that none of the charges were warranted. However, Defendant's submission proving the presence of the loaded gun in the car with Plaintiff's DNA on it demonstrates that there was probable cause for the gun charges, making summary judgment for Defendants appropriate with respect to any malicious prosecution claim on the gun charges.

But Plaintiff also fails to assert an additional essential element of his claim: he makes no assertion that the case was terminated in his favor. Both Plaintiff and the Defendants agree that the criminal prosecution was dropped after the gun was suppressed by a New York court. While federal §1983 malicious prosecution elements mirror New York State law in many ways, federal courts in this Circuit do not follow the New York State courts on the issue of what is defined as a favorable termination. Under federal law, a Plaintiff alleging a §1983 malicious prosecution must show that the termination of his prosecution was "an affirmative indication that [the

9

Plaintiff was] innocent of the offense charged." *Lanning,* 908 F.3d at 28. The termination in this case, merely dropping charges after the suppression of evidence, does not affirmatively indicate Plaintiff was innocent of the charges brought. And the D.N.A. results suggest the opposite.

Many courts in the Second Circuit have held similarly. In *Miller v. Cuccia,* the Plaintiff brought a §1983 malicious prosecution action where his criminal trial was terminated due to suppression of evidence. The District Court granted summary judgment to the Defendant in that case, as it found the suppression of evidence did not constitute termination of the proceedings in the Plaintiff's favor. The Second Circuit reviewed that decision, and found that, "The suppression of the inculpatory evidence [in this case a shotgun, ammunition, and post-arrest statements by the Plaintiff] does not establish or imply appellant's innocence because it was not related to or based upon the reliability or unreliability of the evidence." *See Miller v. Cuccia*, Nos. 99-7088, 99-7122, 1999 U.S. App. LEXIS 30445 at *3 (2d Cir. Nov. 18, 1999).

Similarly, here it appears the central piece of evidence to the gun charges, the gun itself, was suppressed due to either a finding of a lack of probable cause for the stop of the car or the search of the car. I do not have the opinion of the New York State suppression court in the record before me, but in Plaintiff's own complaint he says, "[The] arresting officers never [] had reasonable suspicion or probable cause to approach their vehicle or search them or their property therein…[the] Judge [s]uppressed the evidence." Pl. Compl., 23-24, ECF No. 1. Suppression on these grounds does not relate to the reliability of the loaded gun as evidence of criminal possession. While Plaintiff does say the gun was not his in his deposition testimony, the crime is possession, not ownership, and Defendants provide evidence of a D.N.A. test performed on the weapon which shows with almost certainty that Plaintiff's D.N.A. was found on the "slide grip

10

grooves, slide lock lever and safety" of the gun. *See* Bannister Dep., ECF No. 47-5; D.N.A. Rep., ECF No. 47-9.

As this Court found in *Graham v. City of New York,* "This might be a different case if Plaintiff had put forth a well-pleaded allegation that he did not, in fact, possess the gun…police recovered from him during the unlawful search." *See Graham v. City of N.Y.*, 2018 U.S. Dist. LEXIS 34554 at *18 (E.D.N.Y. 2018). But Plaintiff did not put forward any allegation that he never possessed the gun. Meanwhile, Defendants have put forward strong evidence that Plaintiff did possess the gun. Therefore, because the prosecution was not resolved in Plaintiff's favor, Defendants should be granted summary judgment on the malicious prosecution claim with relation to the gun charges.

Reading Plaintiff's complaint liberally, he has alleged malice and a lack of probable cause for the bribery charges, based upon his account of Officer Luis' statement to him. However, he provides no details on the circumstances under which the bribery charges were dismissed, let alone an allegation that the circumstances were indicative of his innocence. As Plaintiff bears the burden at trial of proving malicious prosecution and has not made any allegations regarding a necessary element of that claim, I recommend summary judgment be granted to Defendants on all of Plaintiff's federal malicious prosecution claims.

### c. Plaintiff's Complaint Should Be Construed as Asserting Illegal Stop and Search Claims.

Plaintiff's complaint is not formatted as a formal legal complaint. Instead, it is a collection of grievances filed by the Plaintiff to other bodies, including a ten-page factual summary written by Plaintiff about what happened. This makes it difficult for Defendants to respond and for the Court to ascertain which laws Plaintiff is suing under and what legal claims he is making. However, Plaintiff is proceeding *pro se*, and the Court is to read the complaint so

11

as to raise the strongest arguments it suggests. Therefore, I recommend the court construe the Plaintiff's complaint as also alleging §1983 actions for an illegal stop and illegal searches under the Fourth Amendment.

Section 1983 provides a remedy where the Defendants, acting under color of state law, have deprived the Plaintiff of a right secured by the Constitution and laws of the United States. *Cox v. County of Suffolk*, 827 F. Supp. 935, 937-38 (E.D.N.Y. 1993). The Fourth Amendment requires that an officer making a traffic stop "have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Gomez,* 877 F.3d 76, 86 (2d Cir. 2017).

According to Plaintiff's complaint, Officers Luis and Giuffre claimed that they stopped the Plaintiff because he was parked adjacent to a fire hydrant, which is illegal. *See* Pl. Compl., 19, ECF No. 1. The Defendants have filed a police report from the incident, which does not mention a reason for the stop. *See* Police Rep., ECF No. 47-8. Plaintiff alleges that he was not parking near a fire hydrant and that, at the suppression hearing, the location of the fire hydrant in question was confirmed to be 85 feet from where Plaintiff was parking the car. Pl. Compl., 23, ECF No. 1. I believe these facts could be construed as a claim by Plaintiff of an illegal stop under §1983.

Additionally, the Fourth Amendment prohibits unreasonable searches.

First, there is the search of Plaintiff himself. Plaintiff says he was frisked after being asked to step out of the car. For such a frisk to be reasonable, the officer performing the search must have reasonably believed Plaintiff was armed and dangerous. *Terry v. Ohio,* 392 U.S. 1, 27 (1968). If Plaintiff's version of events is correct, there does not seem to have been a reason for Officer Giuffre to reasonably believe at that time that Plaintiff was armed and dangerous, giving

12

rise to a claim for an illegal search. The officers clearly had such suspicion once a firearm was located in the car; however, at the time that Plaintiff was actually searched, the officers had not yet searched the car and found the firearm.

Second, there is the search of the car. A search of a car without a warrant is reasonable where there is probable cause to believe the vehicle contains contraband, an exception to the warrant requirement known as the "automobile exception." *United States v. Navas,* 597 F.3d 492, 497 (2d Cir. 2010). Plaintiff claims in his complaint that the Officers Giuffre and Luis have given varying and contradictory answers as to what their probable cause was to search the rental car he was driving. Plaintiff claims that at the grand jury hearing, Officer Giuffre said Officer Luis searched the car because they smelled marijuana as they approached it. Pl. Compl, 21, ECF No. 1. Plaintiff says that at the suppression hearing, the officers instead testified that they observed a marijuana cigarette or cigar on or in a cup holder near the center console in the car. *Id.* at 22. However, Plaintiff points out, this contradicts other testimony by the officers that they observed a "metal object" in the car, which gave them probable cause to search it. *Id.* In the police report submitted by Defendants, it says that Officer Luis observed a .45 caliber semi-automatic pistol in the center arm rest compartment of the vehicle, though it does not specify if that observation was made before or after the search. *See* Police Rep., ECF No. 47-8. The facts Plaintiff alleges gives rise to a claim for an illegal search of the car.

I do not recommend that the Court take a position on whether these allegations would survive a motion for summary judgment. These claims are not included the instant motion and such a motion has not been briefed by the parties. I merely recommend that the Court construe the complaint to include these claims and give leave to Defendants to file a motion for summary judgment on the surviving claims if they elect to do so.

13

### d. Plaintiff's Complaint Should Be Construed as Asserting an Excessive Force Claim

I further recommend the Court construe Plaintiff's complaint to include allegations of excessive force in violation of the Fourteenth Amendment.

"[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." *United States v. Walsh,* 194 F.3d 37, 47 (2d Cir. 1999). To sustain a claim of excessive force, pretrial detainees must show "only that the force purposefully or knowingly used against [them] was objectively unreasonable." *Kingsley v. Hendrickson,* 576 U.S. 389, 396-96 (2015).

Plaintiff claims in his complaint that after being arrested and brought to the precinct for processing, his hands were tightly handcuffed behind his back. He claims he was then led up some steep stairs by his handcuffs and later was left in a cell handcuffed for several hours, during which time he lost circulation in his hands and arms and began to cry. Pl. Compl., 18, ECF No. 1. I believe Plaintiff has pled sufficient facts for the Court to construe his complaint as alleging unconstitutional excessive force, though I again recommend the Court take no position on whether such an allegation would survive a motion for summary judgment.

### II. All Potential State Law Claims, With the Exception of a State Law Malicious Prosecution Claim, Should Be Dismissed as Time-Barred.

Defendants also argue in their motion that any of Plaintiff's potential state law claims are time-barred under N.Y. Gen. Mun. Law §§ 50-e and 50-i (1) because Plaintiff did not serve notice of claim upon the municipality employing the Defendants within the required ninety days from when the claims arose, and because he did not commence an action within one year and

14

ninety days of the incident.[1]  Defendants say the City did not receive Plaintiff's notice of claim until October 2, 2018, over two years after the accrual of the claims. Def. Br., 12, ECF No. 47-3.

Under New York State Law, a Plaintiff suing a municipality or its employees acting in their professional capacity is required to submit a notice of claim within ninety days of the state law claim arising and bring suit within one year and ninety-days after the event upon which the claims are based. N.Y. Gen. L. §§ 50-e(1)(a), 50-i (1); *Wharton v. County of Nassau*, No. 07-CV-2137, 2010 U.S. Dist. LEXIS 99174 at *29-30 (E.D.N.Y. Sep. 20, 2010).  Otherwise, the state law claims must be dismissed.

Here, the stop, search, and arrest at issue took place on May 24, 2016. Pl. Compl., 15, ECF No. 1.  The New York City Comptroller received a notice of claim on October 2, 2018, well beyond the ninety-day deadline. *See* Def. R. 56.1 Br., ¶7, ECF No. 47-2.  This action was filed on December 10, 2018, beyond the one-year and ninety-day deadline set by New York State law. It does appear Plaintiff filed a complaint with the State Supreme Court on September 8, 2017 (Pl. Compl., 37, ECF No. 1) related to the same incident but that complaint only alleged that the NYPD wrongfully took and held $22,091 from him.  Regardless, it too was filed beyond the required one-year and ninety days.

New York law strictly construes notice of claim requirements, and, though this is a federal court, we must apply this rule for New York State claims regardless of whether Plaintiff intended the Court to exercise jurisdiction over any potential state law claims as part of its diversity or supplemental jurisdiction. *See Boda v. Phelan,* No. 11-CV-0028, 2014 U.S. Dist.

---

[1] Though the distinction does not affect this action, it should be noted that state-law actions to recover damages for malicious prosecution are governed by CPLR §215(3), which sets a one-year statute of limitations on those actions. NY CLS CPLR §215(3).

LEXIS 104955 at *22 (E.D.N.Y. July 30, 2014); *Hardy v. New York City Health & Hosps. Corp.,* 164 F.3d 789, 793 (2d Cir. 1999).

However, in malicious prosecution claims, the cause of action does not arise until the underlying legal proceeding is terminated, and the clock on notice and commencement of action does not start until that point. *See Giglio v. Delesparo,* 46 A.D.2d 928 (NY App. 1974). Plaintiff says the charges were dropped against him in September of 2018. Pl. Compl., 25, ECF No. 1. Defendants say the New York City Comptroller received a notice of claim on October 2, 2018, within 90 days of the termination of the action. Def. R. 56.1 Br., ¶7, ECF No. 47-2. This legal proceeding was commenced shortly after, well within the one-year required under CPLR §215(3).

Therefore, to the extent Plaintiff brings any state law claims arising out of this incident, they are time-barred with the exception of any state law claims for malicious prosecution. Should Plaintiff wish to assert such a claim, he should do so with particularity in an amended complaint to afford Defendants the ability to respond, as such a claim would be subject to a different standard for "favorable termination" than a federal malicious prosecution claim.

### III.   Summary Judgment Should Be Granted on All Claims Against Defendant Giannina, and He Should Be Dismissed from the Action

Finally, Defendants ask that the Court dismiss Officer Giannina from this action because Plaintiff has not alleged his personal involvement in violations of law.

For a Defendant to be liable under §1983, he or she must have been personally involved in the conduct at issue. *Singletary v. Russo*, 377 F. Supp. 3d 175, 185 (E.D.N.Y. 2019) ("§1983 liability requires a showing that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "If no reasonable jury could find a particular defendant was personally involved in

16

causing a constitutional violation alleged by plaintiff, then summary judgement should be awarded to that defendant." *Id.*

Plaintiff refers to Mr. Giannina as "transportation officer" in his complaint. His only mention of the transportation officer in his complaint is that he was "transported to [the] precinct by the uniformed transportation officer." Pl. Compl., 17, ECF No. 1. As he does not allege any personal involvement by Mr. Giannina in the conduct he alleges violated his rights, I recommend Defendants be granted summary judgment on any claims against Mr. Giannina, and he be dismissed from this action.

## CONCLUSION

For the forgoing reasons, I recommend Defendants' motion for summary judgment be granted on the false arrest claim and malicious prosecution claims, that the Court construe the complaint as including §1983 claims for unlawful stop and search, and excessive force, that any pending state law claims arising out of this incident be dismissed as time-barred with the exception of any potential state-law malicious prosecution claims, and that Defendant Giannina be dismissed from the action. I also recommend the Court grant Plaintiff leave to amend the complaint should he be able to allege additional facts in support of his remaining claims or should he be able to allege any of his remaining claims with greater particularity.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
      February 16, 2022